## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
LUANNE LYNN MORAN,                                        )
                                                          )
                        Plaintiff,                        )
                                                          )
            v.                                            )          Civil Action No. 09-1819 (ABJ)
                                                          )
UNITED STATES CAPITOL POLICE                              )
BOARD                                                     )
                                                          )
                        Defendant.                        )
_____ )

## <u>MEMORANDUM OPINION</u>

Plaintiff Luanne Lynn Moran brings this action against the United States Capitol Police Board for violating section 1317(a) of the Congressional Accountability Act of 1995, 2 U.S.C. § 1301 *et seq.* ("CAA"), by initiating a series of disciplinary actions in reprisal for exercising her legal rights under CAA section 1302(a)(2). Defendant has moved to dismiss Count IV for lack of subject matter jurisdiction and Counts I, II, V, and VI for failure to state a claim. For the reasons stated below, the Court will grant defendant's motion in full. The Court concludes that plaintiff has failed to meet her burden to establish subject matter jurisdiction with respect to Count IV and that with respect to Counts I, II, V, and VI, she has not identified the necessary predicate for a CAA claim: a materially adverse action.

## I.      Background

### A.  Disciplinary actions[1]

Plaintiff is a Special Agent for the United States Capitol Police ("USCP").  Am. Compl. ¶ 1.  In early 2005, she filed an internal complaint with the USCP about alleged discrimination in the way that special agents were assigned to Representative Nancy Pelosi's protective detail.  *Id.* ¶ 26.  She was later assigned to that detail and alleges that she instantly felt resentment from her superiors.  *Id.* ¶ 27.  In August 2008, she verbally complained to her supervisor about sexually inappropriate comments made by another supervisor, Supervisory Special Agent ("SSA") Dorman Simmons.  *Id.* ¶ 28.  On her supervisor's request, she filed a written internal complaint. *Id.* ¶¶ 29, 31.  Not long after, she began to be the subject of internal investigations and disciplinary measures, which she claims were taken in reprisal for her complaints.  *Id.* ¶¶ 33, 153–59.

The disciplinary actions at issue began on September 4, 2008, when another USCP supervisor, SSA Stonestreet, began investigating an altercation between plaintiff and a co-worker.  *Id.* ¶ 38.  On September 6, SSAs Stonestreet and Simmons issued plaintiff a CP-550 – a personnel performance note for inappropriate conduct – for an incident during which she allegedly made unprofessional and inappropriate remarks about a delay in the detail's motorcade. *Id.* ¶¶ 23, 40.  The next month, she was issued a second CP-550, alleging that she failed to report for duty and failed to monitor communications equipment.  *Id.* ¶ 42.  This led plaintiff to file her third internal complaint, alleging that these disciplinary measure were retaliatory.  *Id.* ¶ 50.

---

1      These facts form the basis of the Rule 12(b)(6) motion to dismiss Counts I, II, IV, and V for failure to state a claim and thus are taken only from the complaint and construed in the light most favorable to the plaintiff.

On November 12, 2008, SSA Stonestreet charged plaintiff with lying during an interview he had conducted with her while investigating her misconduct.  *Id.* ¶ 74.  This charge eventually went up to USCP's Office of Professional Responsibility, which completed its own investigation, *id.* ¶ 76, held a hearing, *id.* ¶ 79, and recommended that a penalty of termination be forwarded to the Chief of Police, *id.* ¶ 80.  The Chief of Police's decision is still pending.  *Id.* ¶ 81.

Meanwhile, on December 9, 2008, SSA Stonestreet issued plaintiff two more disciplinary citations – this time CP-534s, a more severe type of citation than she had previously received. *Id.* ¶¶ 22, 53, 60.  The first citation charged her with "conduct unbecoming of an officer" for her behavior in two prior incidents.  *Id.* ¶ 53.  The second charged her with violating the "rules of conduct concerning courtesy," alleging that plaintiff used profanity and was not polite, courteous, or respectful to a co-worker.  *Id.* ¶¶ 53, 60.  Plaintiff was docked sixteen hours of time and pay as a result of the first citation, and eight hours of time and pay for the second citation. *Id.*  Plaintiff administratively appealed both CP-534s to the Chief of the USCP, challenging their factual bases and contending that SSA Stonestreet had singled her out among her co-workers. *Id.* ¶¶ 67–73.  This appeal was eventually denied, *id.* ¶ 90, and on March 16, 2009, plaintiff was suspended with pay for alleged untruthfulness in her appeal documents.[2]  *Id.* ¶¶ 87, 90.

On July 1, 2009, the USCP issued a Request for Disciplinary Action, which recommended plaintiff's termination for her alleged untruthfulness.  *Id.* ¶ 93.  It is unclear from the complaint whether this recommendation stemmed from the November 12 disciplinary allegations that she was untruthful in the investigatory interview or from the March 16 allegations that she was untruthful in her appeal documents.

---

2       The Amended Complaint does not allege the length of time that plaintiff was suspended with pay.  In its motion to dismiss, defendant argues that at the longest, her suspension lasted twenty-two days.  Def.'s Mot. to Dismiss ("Def.'s MTD") at 16.  In her declaration, plaintiff maintains that the suspension is still ongoing.  Moran Decl. ¶ 5.

### B.  Counseling and Mediation[3]

During these events, plaintiff initiated counseling and mediation, a mandated precursor to filing suit in U.S. District Court under the CAA, 2 U.S.C. § 1402.  *Id*. ¶¶ 84–85.  On the request form for her first counseling session, plaintiff described the conduct for which she was seeking counseling as:  "I received a series of CP-550's [sic] and other criticism from my sergeants," and "[a]fter I complained … about the retaliatory CP-550s, I received a CP-534 comand [sic] discipline report and was docked 16 hours."  Ex. 2 to Def.'s Mot. to Dismiss ("Def.'s MTD").

On March 23, 2009, she filed a second Request for Counseling Form to address the March 16 paid suspension.  Am. Compl. ¶¶ 87, 89.  On the form, she described the conduct for which she was seeking counseling as:  "On March 16, 2009 I was suspended with pay and told I was the subject of an IAD investigation based on concerns about my 'truthfulness.'  These concerns are based on my statements in the appeal I filed of the CP-534 Command Discipline Report issued to me in December 2008. …"  Ex. 6 to Def.'s MTD.  There is no dispute that she completed the counseling and mediation for both of these requests.

On August 14, 2009, plaintiff filed a third Request for Counseling in response to the July 1, 2009 Request for Disciplinary Action recommending termination.  *Id.* ¶ 95.  There is no dispute that she completed the counseling and mediation for this request.

Then, on January 11, 2010, plaintiff filed this action.  In each of her six claims, plaintiff alleges reprisal for her internal complaints, which are protected activities under the CAA. Counts I and II claim that she was issued the September 6, 2008 and October 14, 2008 CP-550s, respectively, in reprisal for the two internal complaints filed in January 2005 and August 2008.

---

3       These facts form the basis of defendant's Rule 12(b)(1) motion to dismiss Count IV for lack of subject matter jurisdiction and thus are taken from the evidence provided by both plaintiff and defendant and construed in the light most favorable to plaintiff, as the non-moving party.

*Id.* ¶ 104, 113.  Counts III, IV, V, and VI claim that the two December 9, 2008 CP-534s charging her with "conduct unbecoming," the March 16, 2009 suspension with pay, and the July 1, 2009 Request for Disciplinary Action recommending termination, respectively, were also retaliatory. *Id.* ¶¶ 123, 133, 145, 158.

## II.      Standard of Review

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc*., 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal citation omitted).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

### A.      12(b)(1) Motion to Dismiss

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibly Int'l Corp*., 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with examination of our jurisdiction.").  Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339

F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986) *vacated on other grounds*, 482 U.S. 64 (1987). Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**B.     12(b)(6) Motion to Dismiss**

"[A]s the standards for review are the same under either Fed. R. Civ. P. 12(b) or 12(c), courts routinely treat motions to dismiss that are filed after a responsive pleading has been made as a motion for judgment on the pleadings." *Langley v. Napolitano*, 677 F. Supp. 2d 261, 263 (D.D.C. 2010). Here, defendant's motion to dismiss Counts I, II, V, and VI under Rule 12(b)(6) is more appropriately construed as a motion for judgment on the pleadings under Rule 12(c) because defendant has already filed an Answer to Plaintiff's First Amended Complaint. Def.'s Ans. [Dkt. # 9]; Fed. R. Civ. P. 12(c).

A motion for judgment on the pleadings pursuant to Rule 12(c) may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66 (D.D.C. 2001), citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Put another way, "[i]f there are allegations in the complaint which, if proved, would provide a basis for recovery, the Court

cannot grant judgment on the pleadings." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (internal quotation marks and citations omitted).

"The standard of review for such a motion is essentially the same as the standard for a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Longwood*, 157 F. Supp. 2d at 66–67. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*. at 1949, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*.

## III. Analysis

### A. Plaintiff has not made the necessary showing that she exhausted her administrative remedies and thus has not established subject matter jurisdiction for Count IV

Defendant contends that the court lacks subject matter jurisdiction over Count IV because plaintiff did not exhaust her administrative remedies as mandated by the CAA, 2 U.S.C. § 1301

*et seq.* The CAA extends the protections of Title VII of the Civil Rights Act of 1964 to employees of the legislative branch.  2 U.S.C. § 1302.  Unlike Title VII, however, under the CAA the court's jurisdiction depends on the completion of counseling and mediation.  *Id.* §§ 1402–1403; *see also Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 701 (D.C. Cir. 2009) (completion of counseling and mediation is required for subject-matter jurisdiction over CAA claims).  To have "completed" counseling and mediation means that "the employee timely request[s] counseling and mediation, that the employee did not thwart mediation by failing to give notice of his or her claim to the employing office upon request, that the mandated time periods have expired, and that the employee received end of counseling and mediation notices from the Office."  *Blackmon-Malloy,* 575 F.3d at 713.

However, the completion of counseling and mediation is not an end in itself or designed to "erect a massive procedural roadblock to access the courts."  *Id.* at 713 (internal quotation marks omitted).  Rather, courts should be flexible in interpreting whether counseling and mediation has been completed in a given case because the purposes of counseling and mediation "are not to compile a record for judicial review but instead simply to afford the employee and the employing office an opportunity to explore and possibly resolve the employee's claims informally."  *Id.* at 711–12.

At issue here is whether plaintiff exhausted her reprisal claim relating to the second CP-534 issued to her on December 9, 2008.  Defendant asserts that counseling and mediation were not completed for this disciplinary action because plaintiff's Request for Counseling Form mentions only the first CP-534 which concerned "conduct unbecoming," and not the second CP-534 which concerned her violation of the Rules of Courtesy.  Ex. 2 to Def.'s MTD.

But the description on the Request for Counseling Form alone may not be dispositive. The question at issue is not whether plaintiff requested counseling for this specific violation on the Request for Counseling form, but rather whether the process of counseling was "completed" for the alleged retaliatory conduct.  2 U.S.C. § 1402; *see also Blackmon-Malloy*, 575 F.3d at 710–11.  Because confidentiality precludes courts from inquiring into what actually happened during the counseling period, other courts have looked to whether the employer was given adequate notice of the claim and the opportunity to handle it internally before the commencement of a formal legal action.  *Blackmon-Malloy*, 575 F.3d at 711.  Based on the record that has been presented, the Court cannot determine whether that occurred here for both CP-534s and therefore concludes that plaintiff has failed to meet her burden to establish jurisdiction with respect to Count IV.

There is reason to believe that the counseling may have touched upon both CP-534s even though plaintiff's description of her complaint on the Request for Counseling Form did not specifically identify the second CP-534.  Plaintiff did administratively appeal both CP-534s with the Chief of the USCP before filing her first Request for Counseling Form.  Am. Compl. ¶ 67. And plaintiff states in her Opposition that the third Request for Counseling Form indicated that she had "raised a reprisal claim" in her first Request for Counseling that addressed the *two* December 9, 2008 CP-534s "which resulted in a loss of pay of 24 hours."  Pl.'s Opp. at 12.   If that is the case, then this description would have put defendant on notice of plaintiff's intent to raise both of the CP-534s during her third counseling and mediation session.  But the third request form, which is attached to defendant's motion to dismiss at exhibit 9, does not contain that description.   It references an attachment that might contain the description, but that attachment is not included in the exhibit.  It follows that, although this is not a case where

plaintiff tried to "thwart mediation by failing to give notice of her claim to the employing office upon request," *Blackmon-Malloy*, 575 F.3d at 713,[4] the Court cannot ascertain on this record whether the claim was mediated or not, and therefore, plaintiff has not carried her burden with respect to jurisdiction on the second CP-534.  As such, Court will grant defendant's motion to dismiss Count IV without prejudice.

### B. The complaint does not allege sufficient evidence of reprisal to support plaintiff's claims in Counts I, II, V, or VI.

Defendant seeks dismissal of Claims I, II, V, and VI on the ground that plaintiff's allegations fail to state a claim for reprisal. Def.'s MTD at 14.  Under the CAA, an employer may not "intimidate, take reprisal against, or otherwise discriminate against[] any covered employee because [she] has opposed any practice made unlawful by this chapter, or because [she] has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter." 2 U.S.C. § 1317(a).  To establish a prima facie case of reprisal, "the plaintiff must establish … (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (internal quotation marks omitted).  Defendant contends that plaintiff's claims do not satisfy element two because the alleged actions that plaintiff suffered by USCP were not "materially adverse." Def.'s MTD at 14.

---

4       *Accord Gordon v. Architect of the Capitol*, 750 F. Supp. 2d 82, 89 (D.D.C. 2010) (determining that the court did not have jurisdiction over the plaintiff's claim that employer retaliated against her for participating in counseling and mediation because she had not requested additional counseling and mediation to address it); *Halcomb v. Office of the Senate Sargeant-at-Arms of the U.S. Senate,* 209 F. Supp. 2d 175, 177 (D.D.C., 2002) (finding that the plaintiff had not completed counseling and mediation for her retaliation complaint because the only period of counseling and mediation that she participated in ended before the alleged retaliation occurred).

To determine whether a challenged employment action is materially adverse under Section 1317(a) of the CAA, courts refer to Title VII's anti-retaliation framework and case law. *See Herbert v. Architect of the Capitol*, 766 F. Supp. 2d 59, 74 n.13 (D.D.C. 2011) ("Claims arising under [the CAA's anti-retaliation] provision are analyzed under the familiar framework and standards governing Title VII's anti-retaliation provision.").   In *Burlington Northern & Santa Fe Railway Co. v. White*, the Supreme Court interpreted Title VII's anti-retaliation provision as requiring a plaintiff to "show that a reasonable employee would have found the challenged action materially adverse, which … means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 68 (2006) (internal quotation marks omitted).   Because the enforcement of Title VII, and similarly the CAA, depends on "the cooperation of employees who are willing to file complaints and act as witnesses," its anti-retaliation provision must provide for broad protection while separating trivial from significant harms. *Id.* at 67–68.

Pursuant to the *Burlington Northern* decision, the D.C. Circuit has held that a materially adverse action by the employer is one that results in significant harm or hardship, such as affecting her "position, grade level, salary, or promotion opportunities."   *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009), quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008).

> 1.   Counts I and II:  Performance personnel notes were not materially adverse

Plaintiff contends that the September 6, 2008 and October 14, 2008 CP-550s were issued in retaliation for her earlier protected activities.   The D.C. Circuit addressed a similar situation in *Taylor v. Solis*, 571 F.3d 1313.   There, the employee asserted generally that she was denied promotional and bonus opportunities as a result of alleged retaliatory low performance

evaluations. *Id.* at 1321. The D.C. Circuit held that these bare and conclusory assertions did not satisfy the plaintiff's burden to show that the lowered performance evaluations were "attached to financial harms." *Id.*; *see also Baloch*, 550 F.3d at 1199 (noting that evaluations and written warnings are adverse actions only when they have "tangible job consequences").

Similarly, plaintiff in this case has not alleged that she suffered losses in pay, promotion, or reassignment of duties, or that she faced any other tangible job consequences as a result of the two personnel performance notes, except for the bare, conclusory assertion that "[t]he effect of the retaliatory employment practices . . . was to deprive [her] of pay, overtime pay, benefits and privileges and otherwise adversely affect and alter the terms and conditions of [her] employment …." Am. Compl. ¶¶ 106, 115. These assertions are insufficient to show significant harm.

Because plaintiff has not alleged that she suffered the significant harm necessary for the Court to find her employer's actions "materially adverse," the Court will dismiss Counts I and II.

2. Count V: Paid suspension was not materially adverse

Plaintiff claims next that she was suspended with pay on March 16 in reprisal for her earlier protected activities. However, like Counts I and II, Count V fails to allege that any harm was associated with this action. Paid suspension alone is not enough to rise to the level of materially adverse unless it causes some further harm or hardship. *Compare Greer v. Paulson*, 505 F.3d 1306, 1317–18 (D.C. Cir. 2007) (holding that suspension with back pay was still materially adverse because plaintiff presented evidence of a demonstrable effect involving objectively tangible harm, which included personal bankruptcy, two real estate foreclosures, and negative marks on her employment record), *with Harper v. Potter*, 456 F. Supp. 2d 25, 29 (D.D.C. 2006) (holding seven-day suspension was not materially adverse because although it was disciplinary in nature, plaintiff was able to remain on the job and in pay status).

Plaintiff asserts in her opposition to defendant's motion to dismiss that she still remains on paid suspension, which has resulted in two years of suspension from the privileges of active duty employment and approximately $85,000 of average overtime pay, Pl.'s Opp. at 10. However, she does not allege these facts in her Amended Complaint.[5]  The only harm she alleges in her Amended Complaint is the conclusory statement that "[t]he effect of the retaliatory employment practices . . . was to deprive [her] of pay, overtime pay, benefits and privileges and otherwise adversely affect . . . the terms and conditions of [her] employment."  Am. Compl.  ¶ 147.  This description does not contain any information whatsoever about the terms of her paid suspension and what, if any, harm it has caused.

Because plaintiff has not alleged any harm resulting from the paid suspension beyond mere conclusory statements, the Court will dismiss Count V.

### 3.  Count VI: Recommendation of termination was materially not adverse

Finally, plaintiff claims the July 1, 2009 Request for Disciplinary Action recommending her termination was issued in reprisal for her earlier protected activities.  Am. Compl. ¶ 158.

While termination itself certainly constitutes an adverse action, *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003), a recommendation for termination is not necessarily materially adverse, *Baloch*, 550 F.3d at 1199 ("Courts have been unwilling to find adverse actions where the suspension is not actually served."); *Boykin v. England*, No. 02-950, 2003 WL 21788953, at *5 (D.D.C. July 16, 2003) (notice of proposed removal is not materially adverse because it is essentially a precursor to a decision to remove).  In this case, the recommendation was simply that:  a recommendation.  Plaintiff does not allege that the recommendation changed the terms of

---

5      Even if the complaint had stated that the paid suspension resulted in the loss of approximately $85,000 of average overtime pay, this still might not be sufficiently concrete to change the Court's decision because it is still a speculative estimate of lost overtime rather than a particularized showing.

her employment or her advancement opportunities beyond the same conclusory assertions of "deprivation of pay, overtime pay, benefits and privileges" that appear in all six counts. Am. Compl. ¶¶ 106, 115, 125, 135, 147, 160. In fact, the complaint gives no details at all about the consequences of the recommendation or the process by which the USCP determines whether to terminate once the recommendation has been issued.

Thus, the Court cannot find the recommendation for termination to be a materially adverse action and will dismiss Count VI.

### 4. Conclusion

For the reasons stated above, the Court will grant defendant's motion to dismiss Counts I, II, IV, V, and VI without prejudice. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: October 27, 2011

14